# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ROBERT D. GREENHILL,**

       **Plaintiff,**

   v.                       **Civil Action 2:19-cv-565**
                             **Chief Judge Algenon L. Marbley**
                             **Magistrate Judge Jolson**

**COMMISIONER OF
SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Robert D. Greenhill, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed his applications for DIB and SSI in January 2016, alleging that he was disabled beginning January 20, 2003. (Doc. 13, Tr. 211–18). After his applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on April 13, 2018. (Tr. 40–61). On May 3, 2018, the ALJ issued a partially favorable decision. (Tr. 23–34). The Appeals Council reviewed the ALJ's decision on its own motion and declined to adopt the ALJ's finding that Plaintiff was disabled as of July 19, 2016. (Tr. 6–10).

Plaintiff filed the instant case seeking a review of the Appeals Council's decision on February 19, 2019 (Doc. 1), and the Commissioner filed the administrative record on May 13, 2018 (Doc. 9). A corrected administrative record was filed on August 23, 2019, which serves as

the record in this matter. (Tr. 13). Plaintiff filed his Statement of Errors (Doc. 10), and Defendant filed an Opposition (Doc. 15). No reply was filed. Thus, this matter is now ripe for consideration.

### A. Relevant Medical History and Hearing Testimony

Plaintiff's statement of errors focuses on his seizure disorder. At the hearing before the ALJ, Plaintiff testified:

> that he went up to the sixth grade in school, but stopped because he had an abscess on his brain. He noted that he underwent a double craniotomy. He stated that he tried to return to school, but was unable to because this condition affected his memory and concentration. He indicated that he now has one seizure every four to six weeks even while on medication. He reported that he has tremors in his left hand before he has a seizure, which causes him to drop things. He remarked that the seizures last for a few minutes, but that it is taking longer for him to recover. He noted that he gets severe headaches most of the time after he has a seizure and they last for most of the day. He stated that his medication has been increased and changed many times. He mentioned that his doctors have told him not to drive. He noted that he has trouble sleeping at night and that he naps for a couple of hours during the day. He maintained that he is able to stand for 10 to 15 minutes before his legs become weak and sore; he can sit for 20 minutes before his legs go numb and begin to swell; and he can lift no more than five pounds so that he does not drop objects.

(Tr. 28).

The ALJ helpfully summarized the evidence relevant to Plaintiff's seizure disorder:

> The medical evidence of record shows that the claimant has seizure disorder (Exhibit 3F, p. 3). The claimant has reported that had a brain abscess removed at age 14 and developed seizures thereafter (Exhibit 8F, p. 1). The claimant has presented to the doctor indicating that he has as many as one to two tonic-clonic seizures per month lasting two to three minutes at a time, which include tongue biting and unconsciousness (Exhibit 3F, p. 1). He stated that they used to only occur in his sleep, but began happening during the day (Exhibit 5F, p. 12). He has also complained of dizziness (Exhibits 5F, pp. 10, 12 and 6F, pp. 4, 19). The claimant has had completely normal neurological examinations, without localizing signs or neurological deficits (Exhibits 3F, p. 3; *S F*, pp. 10, 12; and 6F, pp. *S*, 20). A magnetic resonance imaging (MRI) of the brain in May 2016 revealed stable areas of encephalomalacia and gliosis with a prior craniotomy in the left frontal and left parietal regions, with no new or acute findings (Exhibit 5F, p. 23). The claimant has been prescribed Depakote and Lamictal to treat this condition (Exhibits 4F, p. 13 and 5F, p. 7). Despite this diagnosis, the treatment notes from May 2016 noted that the claimant's seizures had been under good control, with only one event in the last year (Exhibit 6F, p. 3).

> …
>
> As of July 19, 2016, the claimant's seizure disorder was no longer well controlled with medication (Exhibit 9F, p. 10). The treatment notes describe his condition as intractable and refractory (Exhibit 9F, p. 13). The medical evidence demonstrates that the claimant's seizure activity has increased and progressed to having daytime events as well, with postictal lethargy, confusion, headaches, urinary urgency, nausea, and inability to verbalize (Exhibits 9F, pp. 1, 18; 10F, p. 1; 11F, p. 1; 13F, p. 1; 17F, pp. 1, 5, 11; 18F, pp. 6, 7; and 19F, p. 1). He has also experienced medication toxicity (Exhibit 9F, p. 18). The claimant has had normal neurological examinations with the exception of minimal fine kinetic tremor of the bilateral upper extremities, which may [be] the result of medication side effects (Exhibits 9F, p. 17; 11F, p. 1; and 13F, p. 1). An electroencephalogram (EEG) performed in September 2016 was abnormal due to the presence of increased amplitude and intermittent slowing in the left parasagittal head region, consistent with the claimant's known skull defect and structural defect and/or neural dysfunction in that area (Exhibit 9F, p. 5). The claimant has been prescribed Keppra, Depakote, Lamictal, Topomax, Aptiom, Brivaracetam, and other medications to treat this condition (Exhibits 9F, pp. 6, 18; 10F, p. 4; 11F, p. 2; and 17F, pp. 4, 12). The claimant is not considered to be a good epilepsy surgical candidate due to his prior surgical history (Exhibit 9F, p. 18) …

(Tr. 29, 31).

The Appeals Council provided its own summary of the relevant evidence for the time period beginning on July 19, 2016:

> On July 19, 2016, he reported that seizure medications have helped since his teen years in controlling his seizures and that he only has one or two seizures per year (Exhibit 9F, page 13). On October 25, 2016, the claimant reported that he had a seizure event on October 14, 2016 and that his prior seizures had been in July 2016, Easter 2016 and in August 2015 (Exhibit 9F, page 1). On March 7, 2017, the claimant reported that he had one seizure a month (Exhibit 11F, page 1). On June 7, 2017, he reported that he had three nocturnal seizures since his last visit and the last seizure occurred on April 23, 2017 (Exhibit 13F, page 1). The claimant [completed] a seizure questionnaire on February 28, 2018, after he was given a muscle relaxer for a back injury. He also reported that his last seizure prior to that event was on December 27, 2017 (Exhibit 17F, page 1). On March 7, 2018, the claimant reported an increase in the frequency of his seizures from twice a year to one every 6 to 8 weeks (Exhibit 17F, page 1). On March 9, 2018, the claimant had two seizures in the prior 12 hours and reported that he usually has a seizure every 4 to 6 weeks (Exhibit 18F, page 4). Therefore, the claimant's own subjective reports do not support a limitation to missing work two days a month.

A review of the record shows that the objective clinical signs and findings also do not support the additional limitation of missing two days of work a month. According to a July 19, 2016 treatment note, a recent MRI was unchanged (Exhibit 9F, page 18). A September 27, 2016 EEG was abnormal and further testing was recommended (Exhibit 9F, pages 7). A June 2017 outpatient EEG was normal (Exhibit 13F, page 4). A November 16, 2017 neurological examination revealed moderate postural tremors but was otherwise normal (Exhibit 17F, page 11). A February 2, 2018 neurological examination showed cranial nerves II-XII were intact, strength was full, sensation intact, and no ataxia, drift, mild upper tremor that worsens with activity or abnormal movements (Exhibit 17F, page 7). On March 7, 2018, the claimant reported running out of Aptiom on February 22, 2018. On March 9, 2018 the claimant went to the emergency department after having two witnessed seizures in one day (Exhibit 1 8F, page 6). However, the claimant's Depakote level was found to be low (Exhibits 18F, pages 10-11; 19F, page 1).

(Tr. 7–8).

### B. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through December 31, 2020 and had not engaged in substantial gainful employment since July 1, 2015, the amended alleged onset date. (Tr. 25). The ALJ determined that Plaintiff suffered from the following severe impairments: seizure disorder; obstructive sleep apnea; obesity; depressive disorder; anxiety disorder; and mild neurocognitive disorder. (Tr. 26). The ALJ, however, found that since July 1, 2015, none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 26).

As to Plaintiff's residual functional capacity ("RFC") prior to July 19, 2016, the ALJ opined:

After careful consideration of the entire record, the undersigned finds that prior to July 19, 2016, the date the claimant became disabled, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant should avoid ladders, ropes, or scaffolds and moving, hazardous, or heavy machinery; can occasionally crawl; and cannot perform commercial d1iving due to seizures. Mentally, the claimant can perform simple, routine tasks with any changes being well explained and introduced slowly, and with few detailed instructions; can tolerate goal-based work not at a production rate pace and with no strict production quotas; can tolerate occasional interaction

with the public and frequent interaction with co-workers and supervisors; and he
would be off-task nine percent of the day.

(Tr. 27). Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 28).

As to Plaintiff's residual functional capacity ("RFC") beginning on July 19, 2016, the ALJ opined:

> After careful consideration of the entire record, the undersigned finds that beginning on July 19, 2016, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant should avoid ladders, ropes, or scaffolds and moving, hazardous, or heavy machinery; can occasionally crawl; and cannot perform commercial driving due to seizures. Mentally, the claimant can perform simple, routine tasks with any changes being well explained and introduced slowly, and with few detailed instructions; can tolerate goal-based work not at a production rate pace and with no strict production quotas; can tolerate occasional interaction with the public and frequent interaction with co-workers and supervisors; and he would be off-task nine percent of the day. Additionally, the claimant would miss two days of work per month.

(Tr. 30–31). The ALJ concluded that Plaintiff "was not disabled prior to July 19, 2016, but became disabled on that date and has continued to be disabled through the date of this decision." (Tr. 33).

The Appeals Council revised the ALJ's RFC analysis for the relevant time period, opining:

> The claimant's combination of impairments results in the following limitations on his ability to perform work-related activities: the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he should avoid ladders, ropes, or scaffolds and moving, hazardous, or heavy machinery; can occasionally crawl; and cannot perform commercial driving due to seizures. Mentally, the claimant can perform simple, routine tasks with any changes being well explained and introduced slowly, and with few detailed instructions; can tolerate goal-based work not at a production rate pace and with no strict production quotas; can tolerate occasional interaction with the public and frequent interaction with co-workers and supervisors; and he would be off-task nine percent of the day. In view of the above limitations, the claimant

5

has the residual functional capacity to perform a reduced range of the medium exertional level.

(Tr. 9). It concluded that Plaintiff was "not disabled as defined in the Social Security Act at any time through the date of the Administrative Law Judge's decision, April 30, 2018." (Tr. 10).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises two grounds for error to reverse the Appeals Council's decision. (Doc. 10 at 5–9). First, he argues, the Appeals Council erred by failing to consider the arguments set forth in Plaintiff's July 5, 2018 letter. (*Id.* at 5). Second, he asserts, the Appeals Council's RFC analysis was not supported by substantial evidence because, "[w]hen looking at Mr. Greenhill's condition as a whole, the medical record and the testimony clearly support the ALJ's limitation of two absences per month." (*Id.* at 8).

6

Plaintiff cites no authority to support his first argument, (*id.* at 5), and the Undersigned could reasonably conclude that he has waived it as a result, *see Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009), *aff'd*, 399 F. App'x 62 (6th Cir. 2010) (collecting cases) (holding that undeveloped arguments are waived). The Undersigned, nonetheless, assumes for the sake of argument that the ALJ's failure to consider Plaintiff's July 5, 2018 letter was erroneous. But "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (citation and quotations omitted). As a result, "even where the [Commissioner's] decision is based on mistakes, this Court affirms those conclusions if the mistakes constituted harmless error." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014).

Here, any error on the part of the Appeals Council was harmless. Plaintiff's July 5, 2018 letter restated the same facts and arguments that the ALJ cited in concluding that Plaintiff was disabled beginning on July 19, 2016. (*See* Tr. 16–18). But the Appeals Council explicitly addressed those same facts and arguments in its decision disagreeing with the ALJ's RFC analysis. (*See* Tr. 6–10). Consequently, there is no reason to believe that remand with instructions to consider the July 5, 2018 letter would lead to a different result here. *Cf. Shkabari*, 427 F.3d at 328.

This case, as a result, turns on Plaintiff's second assignment of error: Is the Appeals Council's RFC analysis supported by substantial evidence? The Undersigned finds that it is. A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the Commissioner is charged with the final

7

responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the Commissioner who resolves conflicts in the medical evidence. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citation omitted) ("The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.").

Here, the ALJ concluded that, beginning on July 19, 2016, Plaintiff's seizure disorder would cause him to miss two days of work per month and therefore Plaintiff was disabled as of that date. (Tr. 30–31). The Appeals Council disagreed. (Tr. 3–13). It found that the ALJ's conclusion was not supported by substantial evidence and that Plaintiff could perform a reduced range of work at the medium exertional level. (Tr. 9).

Plaintiff's seizure disorder is well-documented, and the record is mixed regarding the frequency of Plaintiff's seizures and their effects on Plaintiff's RFC. Plaintiff testified that he has seizures every four to six weeks and that those seizures tend to last for a couple minutes. (Tr. 48). He indicated that medicine tends to help "for a little while," but he continues to have seizures. (*Id.*). After a seizure, it takes Plaintiff approximately 30 minutes to recover. (Tr. 49). Seizures cause him significant pain, "very, very bad headache[s]," and tremors. (Tr. 50–51). Plaintiff does not drive because of his seizures. (Tr. 51).

Progress notes from July 2016 indicate that Plaintiff had been diagnosed with "[p]atrial symptomatic epilepsy with complex partial seizures, intractable, without status epilepticus." (Tr. 462). He reported having seizures one to two times per year. (Tr. 463). Plaintiff was prescribed numerous medications, which caused a number of side-effects, including tremors, dizziness, and forgetfulness. (Tr. 464). The attending physician diagnosed Plaintiff with "symptomatic,

8

refractory epilepsy" and "significant medication toxicity." (Tr. 467). At a follow-up visit in March 2017, Plaintiff reported having one seizure per month. (Tr. 477). Several months later in June 2017, the treating source observed that Plaintiff "remains seizure free." (Tr. 498). In August 2017, Plaintiff reported that he had experienced three nocturnal seizures since his last visit. (Tr. 495). In March 2018, he stated that he was continuing to have seizures every six to eight weeks and that his seizure frequency had increased. (Tr. 552).

At his consultative examination with Dr. Phillip Swedberg in April 2016, Plaintiff indicated that he had seizures one to two times monthly that lasted two to three minutes at a time and caused him to be unconscious. (Tr. 335). Dr. Swedberg opined that Plaintiff's physical examination "was entirely normal"; similarly, Plaintiff's neurological evaluation was "completely normal without localizing signs or neurological deficits." (Tr. 337). He concluded that Plaintiff:

> appears capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient has no difficulty reaching, grasping, and handling objects. There are no visual and/or communication limitations. The patient should avoid working at heights or driving commercial vehicles.

(*Id.*).

Plaintiff has done his best to identify evidence supporting his position that, after July 19, 2016, his seizures would cause him to miss at least two days of work per month and that therefore he was disabled. (*See* Doc. 10 at 7–9). But, as demonstrated above, the record contains substantial evidence supporting the Appeals Council's conclusion to the contrary. During the relevant time period, Plaintiff reported that he had one seizure per month (Tr. 477), was "seizure free" (Tr. 498), or that he was having seizures every six to eight weeks (Tr. 552). Combined with the generally normal results of Plaintiff's neurological testing (Tr. 7–8), this is "relevant evidence" that "a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241

9

(citation and quotations omitted). And, if the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)). In other words, "if substantial evidence supports the [Commissioner's] decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Plaintiff's reliance on the findings of Dr. Swedberg is misplaced. (Doc. 10 at 7). As an initial matter, Dr. Swedberg conducted his consultative examination in April 2016 (*see* Tr. 335), months before the time period at issue in the Appeals Council's decision. And Plaintiff does not explain how an examination predating the relevant time period compels a different result here. More importantly, Dr. Swedberg's findings suggest that Plaintiff's seizure disorder had little, if any, effect on his ability to engage in substantial gainful activity. (*See* Doc. 337 (finding that Plaintiff "appears capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient has no difficulty reaching, grasping, and handling objects. There are no visual and/or communication limitations. The patient should avoid working at heights or driving commercial vehicles").

At base, Plaintiff's argument is that the Appeals Council's weighing of the evidence was incorrect. But "[t]he [Commissioner], and not the court, is charged with the duty to weigh the evidence," *Crum*, 921 F.2d at 644 (citation omitted), and the Appeal Council's decision was well within the "zone of choice within which the decisionmakers can go either way, without interference by the courts," *Blakley*, 581 F.3d at 406 (citation and quotations omitted).

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: November 6, 2019  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE